## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ROBERTO BANDA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-1787-B |
| | § | |
| OWENS CORNING CORPORATION, | § | |
| | § | |
| Defendant, | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Roberto Banda, brings suit alleging that he was terminated by Defendant because of his race/national origin, disability, and in retaliation. Although Banda has no direct evidence of discrimination, Banda argues that relevant case law allows the Court to infer the existence of discrimination because Defendant's proffered reason for firing him—two safety violations occurring within thirty minutes of one another—was false, and other similarly situated employees outside his protected class were not fired for similar violations. Defendant in turn filed a Motion for Summary Judgement (Doc. 22) arguing that: (1) Banda's race/national origin claim fails because he cannot establish a prima facie case, and even if he could, Defendant had a legitimate nondiscriminatory reason for firing him that is not pretext; and (2) Banda's disability and retaliation claims fail because Banda failed to timely exhaust his administrative remedies. Additionally, after the close of briefing, Banda filed a Motion to Strike (Doc. 36) Defendant's Reply Appendix arguing that Defendant may not file it without leave of court.

Having been fully briefed on both Motions, and for the reasons discussed below, the Court (1) **DENIES** Banda's Motion to Strike because the evidence rebuts Banda's Response to the Motion

for Summary Judgment, bolsters arguments made in Defendant's initial Motion, and does not raise new issues, legal arguments, or theories; (2) **GRANTS** Defendant's Motion for Summary Judgment on Banda's race/national origin claim because even assuming Banda raised a prima facie case, Banda failed to show that Defendant's legitimate, nondiscriminatory reason for termination was pretext; and (3) **GRANTS** Defendant's Motion for Summary Judgment on Banda's disability and retaliation claims as time-barred because he failed to exhaust his administrative remedies and timely amend his charge with the EEOC Therefore, all of Banda's claims are **DISMISSED.**

## I.

### BACKGROUND[1]

This employment-discrimination case arises from Defendant Owens Corning Insulating Systems, LLC's,[2] termination of Roberto Banda. The parties' employment relationship began on June 29, 1994, when Banda was hired to work at Defendant's Waxahachie facility (the "Plant") that manufactures fiberglass products. Doc. 33-1, Pl.'s Resp. to MSJ, 8. At the time of his termination, Banda was employed as a Cold End Group Leader where he was in charge of assigning employees to their various work stations in the Plant, and ensuring that employees under his leadership were producing consistent work product while following the required quality standards and safety procedures. *Id.* at 8, 13. Banda was promoted to this position around January 2015. *Id.* at 8.

Defendant manufacturers various types of fiberglass products. Doc. 23, Def.'s MSJ, 2. The

---

[1] The Court draws its factual history from the summary-judgment record. The Court will note when facts are in dispute.

[2] Banda originally named Defendant as Owens Corning Corporation, Doc. 1, Compl.; however, in his First Amended Complaint, Plaintiff corrected Defendant's name to Owens Corning Insulating Systems, LLC. Doc. 15, Am. Compl., 1 n.1.

manufacturing process utilizes potentially dangerous machinery in melting glass, infusing it with binding and color, treating the product with heat and cold, cutting it to the proper size, and finally packaging and storing it for shipment to customers. *Id.* The manufacturing process is largely automated; however, manual labor is required for certain aspects of the process, including when machinery breaks down or experiences an upset condition and requires repair or adjustments. Doc. 33-1, Pl.'s Resp. to MSJ, 9. Due to the potential dangerousness of the manufacturing process, Defendant implements various safety procedures—of importance to this suit is Defendant's "Lock-Tag-Try" policy ("LTT Policy" or the "Policy"). Doc. 23, Def.'s MSJ, 2. The Policy helps eliminate employee contact with energized machinery by requiring each employee to place his or her own lock on the appropriate lockout place on the machine each time he or she enters a protected area to repair or maintain the machinery. *Id.* at 3. Defendant utilizes the "one man, one lock" concept because machinery is often repaired by multiple employees at a time, thus, the Policy ensures that no employee relies on another to lockout a machine only to accidently have the machine energized while being repaired. *Id.*

Banda was terminated from his position on May 21, 2015. Doc. 33-1, Pl.'s Resp. to MSJ, 13. Defendant asserts that Banda was terminated because of his failure to follow the company's LTT Policy on two separate occasions occurring on May 19, 2015, within thirty minutes of one another. Doc. 23, Def.'s MSJ, 4–5. The alleged violations occurred while Banda was attempting to fix a bisect saw on the V3 production line that was not properly working that day. *Id.* at 4. A bisect saw is a large band saw that is used to cut the fiberglass and has a "lockout matrix" that allows employees to place their lock on an electrical switch before repairing or performing maintenance on the saw. *Id.* at 3–4. Banda admits that he went into the bisect saw protected area twice to repair it and did not apply his

own lock either time. *Id.* at 4 (citing Doc. 24, Def.'s App., 129 (Pl.'s Dep. at 37:2–8)). Banda also admits that in between the first and second violation, Faustino De La Rosa—a machine operator working that same bisect saw on the V3 line that day—warned him that he could not be working on the saw without placing his lock on the machine. *Id.* (citing Doc. 24, Def.'s App., 130 (Pl.'s Dep. at 47:14–23)); Doc. 33-1, Pl.'s Resp. to MSJ, 10. After investigating the incident, Defendant determined that Banda's violation was a Level IV intentional violation of its Safety Violation Standards, and terminated Banda. Doc. 23, Def.'s MSJ, 3–5.

Thereafter, on July 23, 2015, Banda filed an employment discrimination charge with the Dallas Office of the Equal Employment Opportunity Commission (EEOC) alleging race/national origin discrimination. Doc. 24, Def.'s App., 59 (EEOC Charge of Discrimination). Over a year later, Banda amended his charge with the EEOC on August 3, 2016, alleging disability discrimination and retaliation. *Id.* at 50 (Am. EEOC Charge of Discrimination). Banda was mailed a Dismissal and Notice of Rights on April 13, 2017, advising him of his right to file suit within 90 days of the date of receipt of the Notice. *Id.* at 44. Banda then filed suit on July 7, 2017, alleging that in firing him, Defendant discriminated against him based on his (1) race/national origin (Hispanic) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a); (2) disability (diabetes mellitus, renal failure) in violation of the Americans with Disabilities Act Amendments Act of 2008 (ADA), 42 U.S.C. §§ 12101 et seq.; and (3) as retaliation in violation of both Acts. Doc. 15, Am. Compl., ¶¶ 25–27. Defendant filed this Motion for Summary Judgment (Doc. 22) on September 7, 2018. After the close of briefing on this Motion, Banda filed a Motion to Strike (Doc. 36) seeking to strike from the summary-judgment record Defendant's Reply Appendix (Doc. 35). The Court has been fully briefed on both Motions, thus these Motions are ripe for this Court's review.

## II.

## LEGAL STANDARD

Summary judgment is appropriate where the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. Fed R. Civ. P. 56(a); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "A fact is material only if its resolution would affect the outcome of the action, and an issue is genuine only if the evidence is sufficient for a reasonable jury to return a verdict for the nonmovant." *Johnson v. Nationstar Mortgage, LLC*, 2017 WL 1196214, at *2 (S.D. Tex. Mar. 31, 2017) (quoting *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal quotations and alterations omitted).

The movant bears the burden of proving no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Where the nonmovant bears the burden of proof at trial, the movant need not support its motion with evidence negating the nonmovant's case. Instead, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the nonmovant's case. *Id.*; *Little*, 37 F.3d at 1075.

Once the movant has met its burden, the nonmovant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,'. . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Also, a nonmovant may

not simply rely on the Court to sift through the summary-judgment record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The nonmovant must show that the evidence is sufficient such that a reasonable jury could return a verdict for the nonmovant. *Muñoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). The court will not make credibility determinations, weigh the evidence, or draw inferences, but instead confine its inquiry to facts material under the governing legal standard. *Anderson*, 477 U.S. at 255. In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587.

## III.

### EVIDENTIARY OBJECTIONS

In conjunction with the briefing on the Motion for Summary Judgment, Banda and Defendant make several objections to each side's summary-judgment evidence. Additionally, after the close of briefing, Banda filed a Motion to Strike Defendant's Reply Appendix. Doc. 36. Because the admissibility of Defendant's Reply Appendix is relevant in determining the Court's ruling on the parties' respective objections, the Court will first address Banda's Motion to Strike and then each party's objections.

A.    *Banda's Motion to Strike*

The Court first addresses Banda's Motion to Strike. Banda argues that the Court should strike and not consider Defendant's Reply Appendix because under relevant case law and the local rules for the Northern District of Texas, a reply brief is limited to rebutting the nonmovant's response and may not introduce new evidence without leave of court. Doc. 36, Pl.'s Mot. to Strike, 3.

Defendant responds and asks that the Court exercise its discretion and consider the evidence in support of its Reply brief because it is directed at new allegations made by Banda in his Response to its Motion for Summary Judgment. Doc. 37, Def.'s Resp. to Mot. to Strike, 2.

In most circumstances, the Northern District of Texas local rules on summary judgment do not permit a party to submit additional evidence with a reply brief as of right. *Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 103 (N.D. Tex. 2001); *see* N.D. Tex. Civ. R. 56.7. For that reason, a summary judgment movant "may not file a reply brief appendix without first obtaining leave of court." *Dethrow*, 204 F.R.D. at 104. And leave of court is available only under limited circumstances "[b]ecause the purpose of a reply brief is to rebut the nonmovant's response, not to introduce new evidence." *Id.* The Court's charge, then, is to determine whether this is one of those limited circumstances. *See id.*

Defendant asserts that its Reply Appendix fits within that limited circumstance allowing the Court to consider it because the evidence rebuts Banda's Response in which he mischaracterizes his prior deposition testimony. Specifically, Defendant claims that Banda's Response and his Declaration contradict his prior deposition testimony that he was properly trained on the LTT Policy protocol. Doc. 37, Def.'s Resp. to Mot. to Strike, 2–3. Thus, to rebut Banda's assertion of lack of training, Defendant seeks to include excerpts from Banda's deposition, a Declaration from Greg Bowling, Defendant's Plant Manager, as well as Banda's certification and training records. *See generally* Doc. 35, Def.'s Reply App. Also, the Reply Appendix provides portions of Banda's prior deposition testimony that contradicts Banda's Declaration where he states that "Munguia and De La Rosa had locked the energy source to the 'Bisect Saw' with their own locks." Doc. 37, Def.'s Resp. to Mot. to Strike, 3. Banda, on the other hand, replies that the issue is old hat; Defendant made a strategic error

in not including the portions of the deposition transcript and training logs earlier. *See* Doc. 39, Pl.'s Reply Mot. to Strike, 1–4. And that, he argues, does not merit leave. The Court ultimately agrees with Defendant and chooses to exercise its discretion in considering the Reply Appendix.

Despite Defendant's procedural misstep in not seeking leave, the Court chooses to exercise its discretion in considering Defendant's Reply Appendix as summary-judgment evidence because the evidence rebuts Banda's Response to the Motion for Summary Judgment, bolsters arguments made in Defendant's initial Motion, and does not raise new issues, legal arguments, or theories. *See AAR, Inc. v. Nunez*, 408 F. App'x 828, 830 (5th Cir. 2011) ("Generally, and for obvious reasons, a reply brief is limited to addressing matters presented by appellant's opening brief and by appellee's response brief, and is not the appropriate vehicle for presenting new arguments or legal theories to the court.") (internal quotations omitted). The Court does so cautiously and recognizes the importance of parties abiding by this District's local rules; however, based on the parties briefing on the Motion to Strike, the Court joins others in this District in finding good cause for considering this evidence, even without leave of court having been sought. *See, e.g., Lynch v. Union Pac. R.R. Co.*, 2015 WL 6807716, at *1 (N.D. Tex. Nov. 6, 2015) (denying plaintiff's motion to strike and considering the defendant's reply evidence without it seeking leave "[b]ecause Defendant's reply and related evidence are responsive to arguments raised and evidence relied on by Plaintiff in his summary judgment response," and was "not a situation in which a new issue was raised for the first time in a reply that would require the court to give him an opportunity to respond to Defendant's reply . . . or that would require the court to strike the reply."); *Lawson v. Parker Hannifin Corp.*, 2014 WL 1158880, at *5–6 (N.D. Tex. Mar. 20, 2014) (recognizing that plaintiff failed to properly move for leave of court to include a reply appendix, but nevertheless considering it "in the interest of giving

each party a full and fair opportunity to address the issue before the Court"); *Murray v. TXU Corp.*, 2005 WL 1313412, at \*4 (N.D. Tex. May 27, 2005) (denying plaintiff's motion to strike defendants' reply brief and supplemental appendix, and denying motion for leave to file a surreply because the arguments contained within did not raise new arguments or legal theories, but instead rebutted plaintiff's response or bolstered defendants' arguments contained in its initial motion).

The Court notes that this is an infrequent result; however, for purposes of judicial economy and to allow the Court to make an informed ruling with all relevant evidence before it, the Court exercises its discretion and **DENIES** Banda's Motion to Strike Defendant's Reply Appendix.

B.      *Banda's Objections to Evidence*

Next, the Court addresses Banda's objections to Defendant's summary-judgment evidence. Banda first objects to the use of the Declaration of Kristi Fox—the Environmental, Health, and Safety Leader at the Plant who was involved in the investigation of Banda's violations and ultimate termination—arguing that her Declaration contradicts her prior deposition testimony given two days earlier, and thus, is a "sham" to skirt summary judgment. Doc. 33-1, Pl.'s Resp. to MSJ, 14–18; *see also* Doc. 24, Def.'s App., 1–7 (Fox's Declaration).

It is well-settled that the Fifth Circuit "'does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.'" *Hudson v. Cleco Corp.*, 539 F. App'x 615, 620 (5th Cir. 2013) (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)); *see also Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 233 n.9 (5th Cir. 1984) ("The nonmoving party cannot defeat a summary judgment motion by attempting to create a disputed material fact through the introduction of an affidavit that directly conflicts with his prior deposition testimony.").

Banda first points out several sections from Fox's deposition transcript where she expresses a lack of knowledge or recollection over certain facts surrounding Banda's violations and termination. *See* Doc. 33-1, Pl.'s Resp. to MSJ, 14–16 (*e.g.*, not being sure when the bisect saw is used in manufacturing, when and who first reported Banda's violations to her, or whether the bisect saw was already locked out prior to Banda arriving to the area). Banda however does not explicitly state what paragraphs of Fox's Declaration those deposition statements allegedly contradict. Regardless, the Court has compared Fox's Declaration with her deposition testimony and finds that her statements are not clearly inconsistent, thus the sham doctrine is inapplicable. Specifically, the Court concludes that although portions of her deposition testimony are unclear and incomplete, there is no clear contradiction, especially in light of Banda's Lockout Violation Investigation Report, Doc. 33-2, Pl.'s App., 119–21, and Banda's own deposition testimony, both of which corroborate Fox's Declaration. Instead, Fox's Declaration supplements and clarifies, rather than contradicts, her prior deposition testimony, therefore, the Court **OVERRULES** the objection on these grounds. *See S.W.S. Erectors*, 72 F.3d at 496 ("When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment.").

The remainder of Banda's objections to Fox's Declaration argue that her declaration statements are false—not that they contradict her prior sworn testimony. *See* Doc. 33-1, Pl.'s Resp. to MSJ, 17–18. But, the Court's concern in evaluating whether Fox's Declaration is a sham revolves around whether she has contradicted her prior testimony. Objections to the truthfulness of statements in Fox's Declaration—although relevant in determining whether a genuine issue of

material fact exists—do not show that the Declaration is a sham, thus, the Court **OVERRULES** Banda's objection on this basis as well.

Second, Banda objects to Defendant's submission of the Opinion and Award of the Arbitrator and the Arbitrator's Declaration regarding earlier arbitration efforts with Banda. Doc. 33-1, Pl.'s Resp. to MSJ, 18; *see also* Doc. 24, Def.'s App., 18–32. The Court **OVERRULES** Banda's objection as moot because the evidence in question is not considered in rendering this decision.

C.    *Defendant's Objections to Evidence*

First, Defendant objects to the statements in Paragraph 7 and 28 of Banda's Declaration. Doc. 34, Def.'s Reply to MSJ, 9–10. The Court **OVERRULES** Defendant's objection as moot because the evidence in question is not considered in rendering this decision.

Second, Defendant objects to the statement in Paragraph 15[3] of Banda's Declaration where he asserts that the two machine operators present at the time of his violations—Jesse Munguia and Faustino De La Rosa—had locked the energy source to the bisect saw with their own locks. *Id.*; Doc. 33-2, Pl.'s App., 10 (Paragraph 15). Defendant argues that this statement directly contradicts Banda's prior deposition testimony that he had seen two locks on the bisect saw earlier in the morning before his violations occurred, and that at the exact time that he entered the restricted area he assumed the locks were still there, but did not know for sure. Doc. 35, Def.'s Reply App., 7–8. The

---

[3] The Court notes that in fact Defendant states in its Reply that it is objecting to Paragraph 9; however, a review of Banda's Declaration shows that Paragraph 9 does not refer to the statement Defendant is objecting to, Paragraph 15 does. *Compare* Doc. 33-2, Pl.'s App., 9 (Paragraph 9), *with id.* at 10 (Paragraph 15). Also, in Defendant's Response to Banda's Motion to Strike, Defendant states that it is objecting to Paragraph 15 of Banda's Declaration. *See* Doc. 37, Def.'s Resp. to Mot. to Strike, 3. Because it is clear from the record what statement Defendant is objecting to and how it conflicts with Banda's prior testimony, the Court sees no reason to split hairs on what amounts only to a typographical error, and thus treats Defendant's objection to Paragraph 9 as an objection to Paragraph 15.

Court agrees with Defendant and concludes that Paragraph 15 of Banda's Declaration contradicts his prior deposition testimony. Defendants's objection on that point is therefore **SUSTAINED**. *See Hudson*, 539 F. App'x at 620.

Lastly, Defendant objects to the entirety of Joe Camarillo's Declaration—a former employee of Defendant who worked from roughly 1967 to 2014 at the Plant and disputes that the LTT Policy applied to the bisect saw in question—because Banda did not disclose Camarillo as a potential witness in compliance with Rule 26. Doc. 34, Def.'s Reply to MSJ, 10; Doc. 33-2, Pl.'s App., 123–24. Defendant argues that the Declaration should be excluded under rule 37(c)(1), which provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1). Also, Defendant argues that because Camarillo ceased employment at the Plant prior to Banda's violations, he lacks personal knowledge of the safety procedures in place at the relevant time.

Banda responds and argues that Camarillo's Declaration impeached Fox's Declaration, or in the alternative was rebuttal evidence, and thus was not required to be disclosed under Rule 26(a). Doc. 39, Pl.'s Reply to Mot. to Strike, 6–7 (citing Fed. R. Civ. P. 26(a)(1)(A)(i)). However, in contradiction to that argument, Banda served on Defendant his Third Supplemental Disclosures pursuant to Rule 26(a) on November 6, 2018—one week after Defendant pointed out in its Reply regarding the Motion for Summary Judgment that Banda failed to timely disclose Camarillo's identity and contact information. Doc. 38, Def.'s Mot. to Strike Resp. App., 1–4. Regardless of whether the Court considers Camarillo a witness required to be disclosed under Rule 26 or an impeachment or rebuttal witness, Banda does not show how in fact the Declaration of Camarillo—a former employee,

not employed at the relevant time—is impeachment evidence, nor does he give an explanation for his failure to timely disclose under Rule 26 or why that failure is substantially justified or harmless. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563–64 (5th Cir. 2004). Therefore, the Court **SUSTAINS** Defendant's objection to Camarillo's Declaration and strikes it from the summary-judgment record.

## IV.

## ANALYSIS

With all the evidentiary issues determined, the Court now turns to the merits of this case. Defendant moves for summary judgment on each of Banda's claims, which include (1) race/national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2 et seq.; (2) disability discrimination in violation of the ADA, 42 U.S.C. §§ 12101 et seq.; and (3) discriminatory retaliation in violation of both Acts. Banda opposes summary judgment as to each claim. The Court analyzes each of the causes of action below.

A.  *Even Assuming that Banda met his Prima Facie Case of Race/National Origin Discrimination, Banda has Failed to Show that Defendant's Legitimate, Nondiscriminatory Reason for Termination was Pretext, thus, this Claim is **DISMISSED***.

Banda claims that in firing him, Defendant violated Title VII of the Civil Rights Act by discriminating against him on the basis of his race/national origin (Hispanic/Mexican-American).[4] Doc. 15, Am. Compl., ¶¶ 26–27; *see* 42 U.S.C. § 2000e-2(a). Banda did not produce direct evidence of discrimination, thus, his claim is subject to the burden-shifting framework of *McDonnell Douglas*

---

[4]  Defendant does not argue that Banda's Title VII race discrimination claim is time-barred even though Banda's Original Charge only stated discrimination based on national origin. *See* Doc. 24, App., 59. However, the Court finds that Banda's race discrimination claim is not time-barred because in this case the facts supporting his race discrimination claim and his national origin discrimination claim are essentially the same. *See Manning v. Chevron Chemical Co, LLC*, 332 F.3d 874, 879 (5th Cir. 2003).

*Corp. v. Green*, 411 U.S. 792 (1973). *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam); *see also* Doc. 33-1, Pl.'s Resp. to MSJ. 20–21 (conceding that this is a pretext case but arguing that material facts are in dispute). Under *McDonnell Douglas*, a plaintiff must first make a prima facie case of discrimination. *McCoy*, 492 F.3d at 556. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id*. at 557. If the defendant meets its burden, the burden shifts back to the plaintiff to demonstrate the defendant's proffered reason is pretextual. *Id*. The Court finds that even assuming that Banda met his prima facie case of discrimination, Defendant has articulated a legitimate, nondiscriminatory reason for firing Banda, which Banda has failed to demonstrate is pretext. Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment on Banda's race/national origin discrimination claim.

    1.    <u>Banda's Prima Facie Case of Race/National Origin Discrimination</u>

To establish his prima facie case, Banda must show that "(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). The first three elements are not in dispute: (1) Banda is Hispanic/Mexican-American; (2) he was qualified for his position as a Cold End Group Leader; and (3) he suffered an adverse employment action by being fired. Doc. 23, Def.'s MSJ, 18. The Court's focus is thus on the fourth element of Banda's prima facie case—whether Banda was treated less favorably than other similarly situated employees outside his protected group.

To satisfy the fourth element, a plaintiff may proffer fellow employees as "comparators" and

show that "under nearly identical circumstances" the comparators were treated more favorably. *Lee*, 574 F.3d at 260. But, the Fifth Circuit has held that "[e]mployees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated." *Id.* at 259–60 (collecting cases). Ultimately, "[i]f the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis." *Id.* at 260 (internal quotations omitted).

In interrogatory responses, as well as briefing regarding this Motion, Banda identifies several comparator co-workers who he says were non-Hispanic and treated more favorably. Doc. 33-1, Pl.'s Resp. to MSJ, 25–26. Defendant argues that none of the comparators that Banda proffers were similarly situated because none of them were group leaders, violated the LTT Policy twice within a thirty-minute period, or were warned about the LTT Policy in between their two violations. *See* Doc. 23, Def.'s MSJ, 11–16; Doc. 34, Def.'s Reply, 6.

On the summary-judgment record before it, the Court hesitates to conclude that Banda was treated less favorably than similarly situated employees. Although there is some basis in the record for finding that Banda received different treatment from those outside his protected class, such evidence does not clearly establish that these other employees were similarly situated. *See* Doc. 33-2, Pl.'s App., 94–112 (Comparators Write-ups). Moreover, the difference between the circumstances surrounding Banda's termination—a long-time employee tasked with ensuring that lower level

employees followed safety procedures and who violated the LTT Policy twice within thirty minutes—and conduct of those alleged to be similarly situated may very well account for the difference in treatment received from Defendant. *See Lee*, 574 F.3d at 260. However, rather than decide whether the conflicting evidence before it is sufficient to raise an issue of fact as to the final element of Banda's prima facie case, and because the Court decides this claim on the basis of pretext, the Court will assume without deciding that this element of Banda's prima facie case has been met. *See Matsushita*, 475 U.S. at 587 (holding that in the summary judgment context, the Court must view all evidence in the light most favorable to the nonmovant).

2.     <u>Defendant's Burden of Showing a Legitimate, Nondiscriminatory Reason for Banda's Termination</u>

Because the Court assumes that Banda has made his prima facie case, a presumption of discrimination arises, and the burden shifts to Defendant to proffer a legitimate, nondiscriminatory reason for his termination. *See McCoy*, 492 F.3d at 557. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *Id.*

Defendant states that Banda was terminated after its investigation determined that Banda's actions on May 19, 2015, "fit squarely within a Level IV violation of the Safety Violations Standard and for that reason alone he was terminated." Doc. 23, Def.'s MSJ, 19. Banda counters that Defendant's proffered reason is not neutral nor nondiscriminatory because other employees violated the LTT Policy and were not terminated. Doc. 33-1, Pl.'s Resp. to MSJ, 27. Banda's arguments however are misplaced. The Court already assumes that other similarly situated employees were treated more favorably—*e.g.*, other employees violated the LTT policy but were not terminated. Thus, the Court's inquiry is not whether other employees violated the LTT policy and were not

terminated, but instead whether Banda's actions gave Defendant a legitimate, nondiscriminatory reason to terminate Banda. The Court finds that they did.

As previously stated, at the time of his firing, Banda was a Cold End Group Leader. In this role, Banda was in charge of assigning employees to their various work stations in the Plant, and ensuring that the employees under his leadership were producing consistent work product while following the required quality standards and safety procedures. Banda was fired after Defendant determined that he violated the LTT Policy twice in thirty minutes, and more importantly, Defendant determined that in between the first and second violation, Banda was told by a co-worker that he needed to follow the Policy.

In assessing employees' safety violations, Defendant utilizes a four-level progressive discipline approach that assesses punishment depending on the seriousness of the violation. However, "[a]lthough this Standard recommends a progressive approach," the Standard warns that "corrective action may jump to any level, including termination for the first offense." Doc. 24, Def.'s App., 12. Of importance to this case, is that the Standard states that a Level IV violation involves "the intentional violation of a safety requirement that places the employee or others in danger." *Id* at 13. An intentional violation occurs when there is "objective evidence that the employee intended to violate the safety requirement." *Id.* The Standard also provides an example of a Level IV violation of the LTT Policy: "An employee is reminded to lock out equipment by a co-worker and responds that it will take too long." *Id.* at 16.

After its investigation, Defendant found that Banda's actions constituted an intentional Level IV violation and terminated him. Specifically, the investigation found that Banda entered the fenced area of the bisect saw to help Faustino De La Rosa—a Machine Operator working under Banda's

direction on the same line—pull insulation to clear an upset condition. Doc. 33-2, Pl.'s App., 119. While in the fenced area, De La Rosa told Banda that he could not be in there without locking out. *Id.* at 119–20, *see also* Doc. 24, Def.'s App., 130 (Pl.'s Deposition at 47:14–23). In the investigation, Banda did not contest whether he had to follow the LTT Policy but instead stated that "he was just reacting to the upset and it was a 'just in the moment thing.'" Doc. 33-2, Pl.'s App., 119. The investigation also found that fifteen to twenty minutes later, Banda entered the same fenced area of the bisect saw to assist with another upset condition and did not lock out. *Id.* Lastly, the Court also notes that as a part of the investigation, Defendant interviewed De La Rosa, who expressed concern that if leadership (Banda) was not following proper safety procedures, "how can he expect us to follow it[,] [t]hey are not above the safety rules." *Id.* at 120.

Although during Defendant's internal investigation Banda never contested whether the LTT Policy applied to the bisect saw at issue, Banda now questions the validity of the LTT policy, and argues that historically, only machine operators who entered the fenced area were required to lock out the bisect saw, not Cold End Group Leaders like himself. Doc. 33-1, Pl.'s Resp. to MSJ, 21 (citing Doc. 33-2, Pl.'s App., 14 ¶ 32). However, the summary-judgment record is clear on this point. The LTT Policy required that employees place his or her own lock on energized equipment before entering restricted areas. *See* Doc. 24, Def.'s App., 8–10. And as a part of Banda being hired as a Cold End Group Leader, he was aware of and trained regarding Defendant's safety procedures prior to his violations, including following the LTT Policy with regard to the bisect saw on the V3 line. *See* Doc. 35, Def.'s Reply App., 27 ¶ 7 (Declaration of Plant Manager, Greg Bowling, stating that as a part of Banda's certification for Cold End Group Leader he was trained on all three lines (V1, V2, and V3), including Defendant's LTT Policy); *see, e.g., id.* at 79 (2/25/15 Trainer Report on

V1/Recon/V3 lines). Moreover, the validity of the Policy is reinforced by the fact that Banda was warned by De La Rosa between the two violations that he needed to lock out if he was going to be in the restricted bisect saw area and after the two violations his supervisor reiterated the same point. *See* Doc. 24, Def.'s App., 130 (Pl.'s Dep. at 47:14–23); *see also* Doc. 33-2, Pl.'s App., 120–21.

The Court recognizes that the discipline chosen by the Defendant for Banda—a 21-year employee with no prior violations—showed no leniency; however, it is not the Court's role to substitute its own judgment on what the proper punishment should have been given the absence of discrimination. Instead, the Court is tasked with determining whether Defendant had a legitimate, nondiscriminatory reason for the termination. Based on the summary-judgment record before the Court, it finds that Banda's actions on May 19, 2015, constituted a legitimate, nondiscriminatory reason for the termination.

### 3. Banda's Burden of Showing Pretext

Lastly, because the Court finds that Defendant showed a legitimate, nondiscriminatory reason for firing Banda—the two LTT Policy violations—the burden now shifts to Banda to demonstrate that Defendant's proffered reasons for its employment decision is pretext for discrimination. *See Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). The plaintiff makes this showing by providing evidence that discrimination lay at the heart of the employer's decision. *Id.*

Here, instead of showing that race/national origin discrimination was at the heart of Defendant's decision, Banda argues that if a plaintiff shows that an employer's asserted reasons for taking the adverse actions are false, then this showing, coupled with the plaintiff's prima facie case, may be sufficient for a factfinder to determine that the employer acted discriminatorily. Doc. 33-1. Pl.'s Resp. to MSJ, 28 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

But, as discussed above, the Court finds that Defendant had a legitimate, nondiscriminatory reason for firing Banda.

Moreover, Banda's contention that his actions were not safety violations because only machine operators who entered the fenced area were required to lock out the bisect saw, at best creates "a weak issue of fact as to whether [Defendant's] reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination ha[s] occurred." *See Reeves*, 530 U.S. at 148 (recognizing that "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."). While it is true that "[a] court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct[,]" Defendant in this case has shown no inconsistences. *See Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 594 (5th Cir. 2007). From Defendant's internal investigation of Banda's violations, to Banda's union grievance, to the briefing before this Court, Defendant has consistently maintained that its reason for firing Banda was the two LTT Policy violations. Lastly, Banda fails to provide any evidence of race/national origin discrimination, such as derogatory statements made in conjunction with termination or disciplinary matters or during his 21-years of employment with Defendant, but instead, Banda relies on his subjective belief that his ethnicity played a role. *See* Doc. 24, Def.'s App., 133 (Pl.'s Dep. at 79:15–80:14).

Absent other discriminatory evidence, Banda's conclusory allegations and subjective belief are insufficient to show that his race/national origin played any role, much less lay at the heart of, Defendant's termination decision to satisfy a finding of pretext. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004) (*quoting Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002)

("This Court has cautioned that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment.")). Therefore, because the Court finds that Banda has failed to demonstrate that Defendant's legitimate, nondiscriminatory reason for termination is pretext for discrimination, the Court **GRANTS** Defendant's Motion for Summary Judgment.

B.     *Banda Failed to Exhaust his Administrative Remedies and Timely File a Charge with the EEOC Regarding his ADA and Retaliation Claims, thus, These Claims are* **DISMISSED**.

Defendant contends that Banda's disability and retaliation discrimination claims are time-barred due to Banda's failure to properly exhaust administrative remedies. Doc. 23, Def.'s MSJ, 7–9. Specifically, Defendant argues that Banda failed to file or amend his EEOC charge—to include disability discrimination under the ADA or retaliation under Title VII and the ADA—within 300 days after the alleged violation occurred. *Id.*

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). "Thus, before a plaintiff may file a civil action under Title VII or the ADA, he must exhaust administrative remedies, which include filing a charge of discrimination with the EEOC within 300 days after the alleged violations occurred." *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 390 (5th Cir. 2005) (citing 42 U.S.C. § 2000e–5(b), (e), (f); 42 U.S.C. § 12117)). "[A] filing is deemed a charge if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 404 (2008).

Here, Banda was terminated on May 21, 2015, and no other discriminatory acts are alleged

to have occurred after that date. Thus, the 300-day window for Banda to file his charge with the EEOC based on his termination began on May 21, 2015, and expired on March 16, 2016. Plaintiff timely filed his Original Charge with the EEOC on July 23, 2015, but only alleged national origin discrimination. Doc. 24, Def.'s App., 59. Plaintiff then filed an Amended Charge with the EEOC on August 3, 2016,[5] adding claims for race discrimination under Title VII, disability discrimination under the ADA, and retaliation under Title VII and the ADA. *Id.* at 50.

Defendant argues that because Banda filed his Amended Charge "over four months after the limitations period expired . . . he did not properly exhaust his administrative remedies as to his disability discrimination and retaliation claims." Doc. 23, Def.'s MSJ, 8.

In arguing that his disability and retaliation claims are not time-barred, Banda appears to make two separate arguments: (1) his Original Charge and Intake Questionnaire, read together, timely raised these claims; and (2) his Amended Charge relates to the same event as the Original Charge so it relates back to the filing date of the Original Charge, and thus is timely. Doc. 33-1, Pl.'s Resp. to MSJ, 21–22. The Court addresses each argument in turn, but ultimately agrees with Defendant and finds that these claims are time-barred.

First, Plaintiff cites to the Supreme Court's holding in *Federal Express Corp. v. Holowecki*, for the proposition that "in some circumstances 'a wide range of documents might be classified as charges,' including Intake Questionnaires." *Id.* at 21 (quoting 552 U.S. at 402). In that case, the

---

[5] The Court notes that the Amended EEOC charge was signed on July 28, 2016, but was not received by the EEOC until August 3, 2016. *See* Doc. 24, Def.'s App., 50. Regardless of which date is used, Banda's Amend Charge is untimely under the 300-day time limit; however, the Court uses the August 3, 2016 date because that is when Banda says the amendment was filed. *See* Doc. 33-1, Pl.'s Resp. to MSJ, 21.

Supreme Court determined that in the Age Discrimination in Employment Act (ADEA) context,[6] various documents—including an intake questionnaire—can constitute a "charge" "if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf." *Federal Exp. Corp.*, 552 U.S. at 404.

Although not explicitly argued or highlighted by either party, the Court notes that in Banda's July 2015 EEOC Intake Questionnaire, he lists—in the section to be filled "only if you are claiming discrimination based on disability"—that he has a disability, namely diabetes. Doc. 24, Def.'s App., 85. But, in response to another question, which asked: "What is the reason (basis) for your claim of employment discrimination?", Banda only checked the box for race discrimination. *Id.* at 84. Besides disclosing that he had a disability, the remainder of Banda's Questionnaire discloses information regarding a race or national origin discrimination claim. For example, in the Questionnaire, Banda supports his contention that he was discriminated against by listing other employees by race who also worked for Defendant, had engaged in similar work behavior, and received lesser or worse punishments. *Id.* at 84–85 (Questions 6 and 8).

As a whole, Banda's response in the Intake Questionnaire mentioning that he has a disability is insufficient to "be construed to request agency action and appropriate relief" regarding Banda's disability discrimination or retaliation claims. *See Federal Exp. Corp.*, 552 U.S. at 404). Although the Court does not consider dispositive the fact that Banda only checked the box for race

---

[6] In handing down this ruling however the Supreme Court cautioned, and this Court echoes, that "EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII of the Civil Rights Act of 1964, . . . and the Americans with Disabilities Act of 1990 . . . . While there may be areas of common definition, employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Federal Exp. Corp.*, 552 U.S. at 393.

discrimination, and did not check the box for retaliation or disability, that fact, coupled with the paucity of allegations in the Questionnaire and Original Charge do not constitute a timely charge of disability discrimination or retaliation. *See Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006) ("[W]e do not require that a Title-VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency."); *see also Davis v. Wal-Mart Stores, Inc.*, 2007 WL 836860, at *11 (N.D. Tex. Mar. 19, 2007) ("The substance of an EEOC charge, not its form, is the key characteristic for analysis."). First, the Questionnaire and Original Charge are void of any reference to retaliation. Second, in the Original Charge, Banda explains that the reason for Defendant's adverse action was that "[he] was told that [his] discharge was the result of a safety violation, although [he was] aware of non-Hispanic, White coworkers who engaged in similar or more severe conduct and [were] not discharge[d]." Doc. 24, Def.'s App., 59. Lastly, and most importantly, the statements made in the Intake Questionnaire and the Original Charge fail to meet the test of putting the EEOC or the employer on notice of the charges being made. *See Federal Exp. Corp.*, 552 U.S. at 404. The two documents refer only to allegations raising race or national origin discrimination, and do not include facts or allegations that would put the EEOC or Defendant on notice of a disability or retaliation claim. *See* Doc. 24, Def.'s App., 36 (EEOC Recommendation of Disclosure) (acknowledging that "[Banda] amended his charge to include retaliation and allegations under the ADA over a year after he filed the initial charge.").

Second, with regard to Banda's argument that his Amended Charge "relates to the same event so it relates back[,]" Doc. 33-1, Pl.'s Resp. to MSJ, 21, the Fifth Circuit has held that "[g]enerally, amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination." *Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 878 (5th Cir. 2003), *cert. denied*,

540 U.S. 1107 (2004) (collecting cases). EEOC regulations state that "if the amendments involve acts that "relate[ ] to or grow[ ] out of the subject matter of the original charge," the amendments will 'relate back to the date the charge was first received.'" *Id.* (quoting 29 C.F.R. § 1626.8(c)). Based on this EEOC regulation, the Fifth Circuit identified "one very narrow exception" to the general rule that new legal theories raised in an amendment do not "relate back" to the original charge: "when the facts supporting both the amendment and the original charge are *essentially the same.*" *Id.* at 879 (emphasis added). The reason for this is that "[o]ne of the central purposes of the employment discrimination charge is to put employers on notice of 'the existence and nature of the charges against them.'" *Id.* at 878 (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984)). Thus, the relevant question in determining whether Banda's additional claims included in his Amended Charge "relate back" to the Original Charge is not whether they relate to the same event (the firing), but "whether the [Banda] already included sufficient facts in his original complaint to put [Defendant] on notice that [he] might have additional allegations of [disability and retaliation] discrimination." *Id.* at 879.

Plaintiff contends that in *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970), the Fifth Circuit held that an untimely amended charge that alleged national origin discrimination could relate back to an original complaint alleging only sex discrimination. Doc. 33-1, Pl.'s Resp. to MSJ, 22. However, as explained by a subsequent Fifth Circuit opinions[7] and applicable here, *Sanchez* is

---

[7] Although the Court finds *Sanchez* distinguishable from this case, the Court notes in addition that the Fifth Circuit has appeared to limit the applicability of *Sanchez* and its holding in subsequent opinions, especially since 2003 when the Court issued its opinion in *Manning* and identified "one very narrow exception" to the general rule that new legal theories raised in an amendment do not "relate back" to the original charge. *Manning*, 332 F.3d at 878–79; *see, e.g.*, *Clayton v. Rumsfeld*, 106 F. App'x 268, 272 (5th 2004) (distinguishing *Sanchez*).

distinguishable because "the amended complaint [in *Sanchez*] related back to the original claim because the facts alleged in the complaint, and upon which both charges of sex and national origin discrimination were based, *were identical.*" *See Hornsby*, 777 F.2d at 247 (emphasis in original) (distinguishing *Sanchez* and holding that plaintiff's amended charge, which added a charge of sexual harassment and additional facts, could not relate back to the original charge of age and sex discrimination). Like *Hornsby*, this Court's ruling is consistent with *Sanchez* because Banda's Amended Charge adds additional facts that were not included in the Original Charge.

Here, the facts and allegations set forth in Banda's Original Charge and Intake Questionnaire of race/national origin discrimination are not the same facts and allegations that would support or give Defendant notice of the claims for disability discrimination and retaliation. *See Manning*, 332 F.3d at 878–79 (finding that plaintiff's amended charge of disability discrimination was time-barred and did not relate back to his original charge of race and gender discrimination because plaintiff did not check the box for disability discrimination nor did he allege sufficient facts in his original charge to support a disability discrimination claim); *see also Davis*, 2007 WL 836860, at *10–11 (finding summary judgment on plaintiff's retaliation claim proper where plaintiff's original charge of gender discrimination was void of any implicit or explicit reference to retaliation, and included no facts or allegations to put the EEOC or defendant on notice that retaliation was part of the charge). In Banda's Original Charge he states that his "Personal Harm" is that "[o]n or about May 21, 2105, [he] was informed by Kristi Fox, Safety Leader, that [he] was discharge[d]," and then goes on to state that "[he] believe[s] [he] was discriminated against on the basis of National Origin, Hispanic." Doc. 24, Def.'s App., 59. However, in his Amended Charge, Banda adds additional facts to his "Personal Harm" statement and says that "[i]n March of 2015, I was diagnosed with Renal Failure.

I am diabetic and I was also told that I would need a kidney transplant[,]" and goes on to add charges for disability discrimination and retaliation. *Id.* at 50. Thus, Banda's Amended Charge cannot "relate back" since the facts supporting both the amendment and the original charge are not essentially the same. *See Manning*, 332 F.3d at 879; *see also Sanchez*, 431 F.2d at 462 ("[T]he crucial element of a charge of discrimination is the factual statement contained therein.").

Lastly, the Court acknowledges that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Courts may evaluate whether it would be proper to apply such doctrines, although they are to be applied sparingly."). "[T]he plaintiff bears the burden of demonstrating a factual basis to justify tolling of the limitation period." *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999). Here, however, Banda does not seek and the Court does not find any facts in the record that would justify an equitable tolling or waiver of the statute-of-limitations type requirement set forth by both Acts.[8] *See Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 810 n.14 (5th Cir. 1991) ("Equitable tolling focuses on the plaintiff's excusable ignorance of the employer's discriminatory act."). Similarly, nothing in the record supports equitably estopping Defendant from asserting that Banda's claims are time-barred. *See id.* ("A defendant is equitably estopped from asserting that a claim is time-barred where its conduct induced a plaintiff to refrain from exercising its rights.").

---

[8] The Fifth Circuit identified three potential bases for equitable tolling, none of which are supported by the record here: "(1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's lack of awareness of the facts supporting his claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about his rights." *See Manning*, 332 F.3d at 880.

Although the Supreme Court has cautioned district courts that "a technical reading [of the requirements set forth in Title VII or the ADA] would be particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process[,]" *Zipes*, 455 U.S. at 397, the Supreme Court has also stated that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver*, 447 U.S. 807, 825–26 (1980) (holding that "[b]y choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination."). Therefore, the Court finds that because no facts support applying the "relation back" or any equitable doctrine to the 300-day time requirement, Banda failed to exhaust his administrative remedies, thus, Defendant's Motion for Summary Judgment as to Banda's disability discrimination claim under the ADA and retaliation claims under both Acts is **GRANTED**.

Alternatively, even assuming that Banda exhausted his administrative remedies with respect to his disability claim—which he has not—the Court finds that he has failed to create a genuine issue of material fact that Defendant's legitimate, nondiscriminatory reason for firing him, *see* discussion *supra* Section IV.A.2., was pretext for disability discrimination.[9] First, the Court finds that Banda fails to satisfy pretext alternative for the same reasons his race/national origin claim fails on pretext—Defendant's reason for firing him was not false and Banda has no evidence that his disability was the reason for his firing besides conclusory allegations and his own subjective belief. *See* Doc. 24, Def.'s App., 133 (Pl.'s Dep. at 79:15–80:14); *see also* discussion *supra* Section IV.A.3.

---

[9] At the pretext stage of the disability discrimination burden-shifting framework, an employee must either show that the defendant's reason for termination is pretext for the proffered reason (pretext alternative), or that defendant's reason, while true, is not the only reason for the defendant's conduct and that another "motivating factor" is the plaintiff's disability. *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 702 (5th Cir. 2014).

Second, although couched in the language of his prima facie case, Banda in essence also argues that his disability was a motivating factor for his termination. Banda argues that Defendant is a self-insured employer; he was diagnosed in March 2015 with renal failure and was told that he needed a kidney transplant that was to occur in December 2015; Defendant's nurse at the Plant was aware of this information in April 2015; and thus, his disability and need for a presumably expensive procedure and lengthy leave of absence was a motivating factor in Defendant's decision to fire him. Doc. 33-1, Pl.'s Resp. to MSJ, 24–25. However, the Court finds this theory highly speculative, and more importantly, not supported by the summary-judgement record. *See Roberson*, 373 F.3d at 654 (quoting *Ramsey*, 286 F.3d at 269 ("This Court has cautioned that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment.")). Banda fails to show that the nurse told Fox or other individuals involved in the decision to terminate Banda about his need for a kidney transplant. And, in his deposition, Banda admits that Defendant on two occasions after his termination, offered him the opportunity to work for it as a crewman or packing attendant, which he rejected. Doc. 24, Def.'s App., 133 (Pl.'s Dep. at 80:15–80:25). Thus, absent more evidence it is difficult for the Court to infer that Defendant was using the safety violations as an excuse to completely terminate Banda and limit its financial liability as to his medical costs or leave of absence. Because Banda has failed to demonstrate a genuine issue of material fact regarding pretext, Defendant's Motion for Summary Judgment should be granted as to Banda's disability discrimination claim on this basis as well.

## IV.

## CONCLUSION

For these reasons, the Court **DENIES** Plaintiff's Motion to Strike (Doc. 36), **GRANTS**

Defendant's Motion for Summary Judgment (Doc. 22), and **DISMISSES** all of Plaintiff's claims.


**SO ORDERED.**

**SIGNED: December 21, 2018.**


_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE